[No. 16237. Department One. April 15, 1921.]

## C. P. GILES et al., Respondents, v. THE CITY OF OLYMPIA, Appellant.[1]

MUNICIPAL CORPORATIONS (219)—LOCAL IMPROVEMENTS—ASSESSMENTS—AGREEMENTS WITH CITY. Where landowners had dedicated land to a city for highway purposes under a contract that their abutting land should be free from assessment for the improvement of the street, their failure to appear before the city council at the time fixed in the initiatory resolution to protest against the proposed improvement of the street, to which they were not objecting, would not estop them from later objecting to the assessments imposed upon their property.

SAME (219). The objection that there was no consideration for a contract freeing plaintiffs' lands from assessments for grading and graveling a street for which they dedicated land, because of the fact that the public had already acquired a right of way thereover by prescription, was without merit in view of the fact that the right of way was hardly more than a trail, and the contract secured to the city a roadway of specific width and definitely located, with a right to cut into the side hills on plaintiffs' premises exempt from any liability for damages from excavating and embanking thereon.

DEDICATION (12)—STATUTORY DEDICATION—RECORDING. The neglect of the city to record a dedicatory plat to itself could not be set up by the city to defeat compliance with contract terms upon which the dedication had been made.

MUNICIPAL CORPORATIONS (352)—STREETS—CONSIDERATION FOR PURCHASE—"GRADING AND GRAVELING". Under Laws 1889-90, pp. 183, 189, §§ 117, 125, a city of the third class had power to acquire the necessary right of way for streets by the purchase thereof and to make all necessary contracts in regard thereto.

[1]Reported in 197 Pac. 631.

Municipal Corporations (351)—Streets—Conditions in Dedication—Rights of Municipality.  A dedication of land to a city, limited upon a condition that the expense of improving the land as a street shall not be borne by the abutting land of the dedicators is a reasonable one, and the condition was enforceable where the city had power to acquire land for highways by purchase and make all necessary contracts for the purpose.

Same (219)—Local Improvements—Assessments — Agreements with City.  Where a contract between a city and property holders exempted the latter from assessment of their abutting property for · the cost of "grading and graveling" a street for which they had dedicated a portion of their lands, such contract protected them from assessment, though the improvement, in addition to calling for grading and graveling the street, included, also, the construction of drains, culverts, sewers and bridges; since the latter were merely incidental to the principal improvement.

Appeal from a judgment of the superior court for Thurston county, Wright, J., entered October 18, 1920, upon findings in favor of the plaintiffs, in an action to cancel certain assessments levied for local improvements, tried to the court.  Affirmed.

*William W. Manier* and *George R. Bigelow,* for appellant.

*Troy & Sturdevant,* for respondents.

Holcomb, J.—The owners of five lots or tracts, included in the local improvement district known as local improvement district No. 263, of the city of Olympia, appealed to the superior court from the final resolution of the city council of Olympia, which included their properties within the local improvement district, and levied special assessments against the same.  The improvement was initiated by the city council by resolution for the purpose of "grading, gravelling, draining, constructing necessary culverts, sewers, bridges, and such other work as may be necessary in connection therewith," Farragut avenue, and Farragut avenue extended, from Jackson street north to its intersection

with West Bay avenue, and West Bay avenue north to the plant of the Buchanan Lumber Company. The roadway runs along the waterfront on the west shore of the bay. At the time fixed in the initiatory resolution of the council calling for protests against the proposed improvement, none of these respondents appeared before the council or in any manner objected to the making of the improvement. There was no attack made upon the legality of the proceedings in and by the city council until the work had been completed, and the assessment roll prepared and submitted to the city council for confirmation. Respondents then appeared before the city council and filed objections upon the principal ground, as stated, that,

"The said premises comprising such West Bay avenue abuts upon and runs across said property. This property was granted to the city of Olympia upon the express consideration and condition that the said abutting property aforesaid was to be released, exempt and free from any costs and assessments by way of grading, gravelling, etc.; the said premises consisting of the said street was conveyed about 1891 or 1892, and the sole consideration therefor being the exemption of the aforesaid property of the plaintiffs from future costs and expenses by way of grading, gravelling, etc., and the said premises having been expressly released by a written contract."

Upon the hearing, upon appeal to the superior court, findings, conclusions and decree were entered by the court, sustaining the objections of respondents, and decreeing that the assessments against respondents be cancelled.

The city appeals and urges that the decree of the superior court should be reversed upon the following grounds:

1. The respondents, not having presented their objections to the city council at the time of the hearing on

the initiatory resolution, are estopped from thereafter doing so.

2. Where a right of way is already had by prescription, there is no consideration for an agreement to purchase a right of way, even though a greater width of roadway is given than existed by prescription.

3. The dedication claimed in this case cannot be enforced for the reasons: (a) that the dedication or plat was not recorded; (b) that the city council had no statutory authority to enter into or accept any such condition; (c) that the decision of the lower court exceeds the terms of the reservation; and (d) a deed or other dedication of land to the public for use as a roadway containing a condition is void, as to the condition, the grant stands but the condition falls.

Respecting appellant's first contention, it is necessary to consider the situation in which respondents' rights were involved.

Prior to 1892, a trail or roadway of some description was traveled along the water front about twenty feet above the water, which was narrow, irregular, unimproved, and only in a passable condition. In 1892 the city council of Olympia, by negotiation with respondents, and their predecessors, obtained a definite right of way for a street to be called West Bay Avenue, across the lands owned by respondents and their predecessors, of a sufficient width and course; caused it to be surveyed by the city engineer, and procured from them a deed describing the tracts of land to be included in the street, and in pursuance thereof, a dedication was duly executed and acknowledged by the landowners. This instrument, which was attached to the plat, contained a recital:

"The land owners have consented to a survey of the premises by the city engineer of the city of Olympia."

And also contained a waiver, as follows:

"And we do hereby waive all claims for damages by reason of excavation or embankment resulting from the improvement of said West Bay avenue."

Then follows a condition attached to the dedication, as follows:

"Provided, and this dedication is expressly conditioned that the city of Olympia shall undertake and from time to time improve said avenue by grading and gravelling the same, and the expense thereof shall be paid from the general tax of the city and no part thereof shall be assessed against the property abutting any land hereby dedicated."

Attached to the instrument was the city surveyor's certificate that he had surveyed the land and that the courses and distances indicated on the plat and in the dedication are correct to the best of his knowledge and ability. There was also a certificate attached to the dedication that it was sufficient, signed by the city attorney, and a certificate of the city clerk, as follows:

"This dedicatory plat of West Bay avenue was approved by the city council of the city of Olympia on the 16th day of February, 1893."

This instrument was never filed and recorded in the office of the county auditor. The street was, however, opened and somewhat improved at about that time, by grading and building bridges, all of the value of more than $400. It has been continuously used as a public street ever since.

These respondents made no objection to the improvement of the street as proposed, under local improvement district No. 263, and it may be assumed that they were entirely willing that such improvement be made. Since they were not remonstrants against the establishment of the local improvement district, and the

making of the improvement proposed, it was not incumbent upon them to appear before the city council and make any objections, or assert any of their rights until it was found that their premises were to be specially assessed for the improvement. This was not made known and they could not object until the assessment roll was filed and notice of hearing thereon was given, when they appeared, set up their contract, and demanded compliance with its provisions. That was the proper time. In fact, they or their predecessors had contracted with the city that the improvements should from time to time be made, and they were probably estopped to contest the making of the proposed improvements. This, however, does not conclude them as to their rights to object to the special assessments made for the improvement. *In re Shilshole Avenue,* 94 Wash. 583, 162 Pac. 1010.

The next contention of appellant, that where a right of way is already had by prescription, there is no consideration for an agreement to purchase a right of way, even though a greater width of roadway is given than existed by prescription, is sought to be sustained by our decision in *Olympia v. Lemon,* 93 Wash. 508, 161 Pac. 363.

That was, in its inception, a condemnation case to acquire the right of way involved, and was converted into a suit to quiet title wherein it was determined that the roadway had been long established by prescription, and that the city had no need to condemn the land, and its title was quieted. It is not in point in this case. In this case the appellant is not attempting to acquire a right of way for they proceeded upon the assumption that they already had and owned the right of way, and the respondents acquiesced therein. Owning the right of way, the city had a right to improve it. When it

proceeds to improve it under the local improvement district law, assessing the special benefits to the abutting property it is met with the contract made by itself previously to the effect that as to these properties, it must, when improving the same by grading and gravelling, pay the expense thereof from the general fund of the city, and no part thereof to be assessed against the property of these respondents.

The city contests that claim of respondents upon the grounds: first, that the dedication or plat was not recorded; second, that the city council had no statutory authority to enter into such a contract; and third, that the deed or other dedication of land to the public for a roadway containing a condition is void as to the condition; the grant standing but the condition falling.

As to these contentions, it is immaterial that the dedication or plat was not recorded. That was the neglect of the city itself. The dedication was approved and accepted by the city council after its execution, and the city council has always assumed that it owned the land dedicated and granted, and made no attempt to acquire the same by eminent domain proceedings or purchase. The city council certainly had statutory authority to enter into a contract containing the conditions relied upon by respondents. Laws of 1889-90, p. 183, § 117; Laws of 1889-90, p. 189, § 125.

At the time of the acquisition of these properties for street purposes, the present eminent domain statute, by which property could be acquired for street purposes by cities of the third class, and paid for out of the abutting property, was not in effect. The only statutes that were then in effect were the old general eminent domain statute, 1 Hill's Code, § 673, and the charter of the city. When this contract was made the city was compelled to either purchase the premises for

street purposes or to condemn the land in the manner and form then prescribed generally for all eminent domain appropriations, and pay the consideration out of the general fund. Instead of proceeding by eminent domain appropriation, the city, being able to agree with the landowners, acquired the necessary right of way to comprise and define the street desired by the city, and a part of the consideration therefor was that the grading and gravelling of the street should be without charge to the property abutting upon the portion of the street thus acquired. The city certainly had power under its charter to acquire the necessary right of way for streets and highways by the purchase thereof, and to make all necessary contracts in regard thereto, such as the agreement here involved.

The contention that a road existed across the premises of respondents by prescription, and that therefore there was no consideration for the grant by respondents to the city, cannot be sustained. Such road as did exist was a mere trail, or a very narrow road, and the city had no right to cut into the side hills where such existed on the premises of these grantors, which right it acquired from respondents, together with a waiver of all damages for excavating and embanking, which would result from the improvement of the street upon the premises of respondents. It obtained also a well-defined highway, definitely located and of a specific width, which it did not have theretofore.

The contention that a deed or other dedication of land to the public for use as a roadway containing a condition is void as to the condition; the grant standing but the condition falling, is much more serious.

There is a division of authorities upon this question. 4 McQuillin, Mun. Corp., § 1545, to the effect that, "a condition in a deed of dedication of land for streets

that the abutting lots shall be free from *assessments for improvements* of the streets is void''; and 1 Elliott, Roads & Streets (3d ed.), § 163, to the effect that, ''a condition in a deed of land sold a city for a street, providing that, as a part of the consideration, the grantor and the remaining portions of the lot should not be charged with any costs connected with the extension or maintenance of the street, is void,'' are cited to sustain appellant's position.

The above authorities cited cases from Indiana, Michigan, Missouri and Louisiana. A case from our own court, *State ex rel. Grinsfelder v. Spokane St. R. Co.,* 19 Wash. 518, 53 Pac. 719, 67 Am. St. 739, 41 L. R. A. 515, is also cited. The last case was one where in platting an addition to the city, and dedicating the streets therein to the public, the dedicator attempted to reserve the right to operate street railway lines upon the streets, and this court held that such a condition was void, merely making the brief statement that if any condition is annexed to such dedication the condition falls and the grant stands, citing the authorities above cited. Although we are still in accord with the case above cited from this court, there is a great distinction between such a case and this. No dedication is good, under all the authorities, which attempts to take from the public authorities their full power and control over streets. That is the principle upon which that case is based, and is a principle universally observed.

The texts from Elliott, Roads & Streets, and McQuillin, Mun. Corp., are based principally upon decisions from Michigan, Ohio, Missouri and Louisiana, the leading case being from Ohio, *Richards v. Cincinnati,* 31 Ohio St. 506. It appears that generally municipalities in those states were required to provide for the pay-

ment of the cost of improvements of streets by assessment against abutting property, and such condition in a dedication was held to impair the power of the city to spread all the cost of improvement over all the property abutting.

As a general rule, the dedicator may impose reasonable conditions and restrictions in making a dedication of his property. The dedicator may impose a condition that the expense of turning the land dedicated into a street shall be borne. by the public and not by the abutting property. 18 C. J. 71.

The grantee generally gets what the grantor conveys, and the grantee must generally accept the dedication as the legal phrase is, *secundum formam doni,* or according to the form of the gift or grant.

In this case the dedication was somewhat more than a mere general dedication to the public. It was an express dedication or grant to the public of the city of Olympia after previous negotiations and agreements, and limiting the express dedication upon certain conditions, to wit: that the improvement of the street by grading and gravelling should be paid from the general fund of the city, and no part thereof assessed against the abutting property of the dedicators. The provision that such improvement costs should be paid from the general tax of the city is, doubtless, void; for it impairs the power of the city to provide as it has for the creation of a local improvement district and spreading the cost upon the property abutting—even though the respondents' property must be excepted.

The trial court found (and there was ample evidence to support the finding), that, in 1892, the city of Olympia contracted and agreed with the owners of the premises involved herein, by contract running with the land, that, in consideration of the granting by the owners of

the premises of such right of way for such avenue, the city would not assess the abutting property for the expense of grading and gravelling the street thereon; that a portion of such right of way was taken at that time, and an additional and considerable portion of the right of way was taken by the city by special proceedings in local assessment district No. 263.

A case which we consider exactly applicable to the instant case, is *Perth Amboy Tr. Co. v. Board of Aldermen etc.,* 75 N. J. L. 291, 68 Atl. 84. In that case certain parties as owners in fee had dedicated to the public use as a street of the city of Perth Amboy, a strip of land afterwards called Sheridan street. The deed contained the condition subsequent:

"That the said street shall be graded and worked so as to form a convenient approach to said bridge and connect therewith as soon as it shall be completed for public use, including the erection of a proper crossing or bridge over said Raritan North Shore railroad; the owners of property bordering upon said street to be free from municipal assessments therefor or for other street improvements unless the same shall be solicited by a majority in interest of the said owners."

The city council accepted the dedication, adopted the street and expressly provided that the acceptance and adoption were subject to all things stated in the instrument of dedication. The city opened the street, worked and graded it pursuant to the scheme recited in the dedication, and levied the cost of the work as an assessment upon the lands in direct violation of the terms of the deed of dedication. The court, Garrison, J., said:

"The excuse of the city for levying the assessment in question in the face of the condition of dedication which it had accepted is that it had no power to accede to the condition upon which the land for Sheridan

Street was given by its owners to the public. The claim of the city is that the dedication should stand, but that the condition upon which it was made should be ignored. We cannot take this view of the legal situation. The condition, so far as it affected Sheridan Street, being limited to a single expenditure for a specific purpose, was in effect the price the city was willing to pay for the land. If the city had power to buy the land at such sum, it had power to agree to expend such sum upon the land as the condition of its perpetual dedication to public uses. After the expenditure of the sum thus required the public have no more standing to exact payment from the abutting owners than the owners have to exact damages from the public for taking the land. Dill. Mun, Corp. (3d ed), § 632, and cases cited in the notes.

"The presence in the deed of dedication of conditions not involved in the present controversy does not militate against the views that have been expressed and need not, in our judgment, be further considered in the present proceeding."

The assessment was set aside.

So, in this case, the city obtained from the respondents the ground necessary for a street of the courses, distances and width it desired, and the waiver of all damages for excavating and embanking along the abutting property and agreed that it would not assess the property for grading and gravelling the street. While the city council was acting in a governmental capacity, it is true, nevertheless it was acting within its powers and cannot be said to have acted *ultra vires*. We have decided many times that municipalities should be held to the same standards of right and wrong that the law imposes upon individuals. *Franklin County v. Carstens,* 68 Wash. 176, 122 Pac. 999; *Coliseum Inv. Co. v. King County,* 72 Wash. 687, 131 Pac. 245; *Ettor v. Tacoma,* 77 Wash. 267, 137 Pac. 820; *Mallory v. Olympia,* 83 Wash. 499, 145 Pac. 627.

Appellant also insists that the court went beyond the limit in granting the relief to respondents, because,

"Though the contract exempts the property of respondents from costs of grading and gravelling assessed against their property, that the present improvement consists in grading, gravelling, draining, constructing any necessary culverts, sewers, bridges, and doing such other work as may be necessary in connection therewith."

The grading and gravelling is the principal item of the improvement. While constructing that improvement it is, of course, necessary to construct drains, culverts, sewers, and bridges, but they are all incidental to the principal improvement.

We think the judgment of the trial court is right, and it is affirmed.

PARKER, C. J., BRIDGES, MACKINTOSH, and FULLERTON, JJ., concur.